E-FILED
Monday, 17 March, 2008  12:05:44 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHARLES TAYLOR,
   Plaintiff,

   vs.                          No. 06-1011

ROGER WALKER , et al.,
   Defendants.

<u>ORDER</u>

This cause is before the court for consideration of the Defendants' Motions for Summary Judgement. [d/e 38, 40]

## I. BACKGROUND

The plaintiff, Charles Taylor, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Hill Correctional Center. The plaintiff named four defendants including Illinois Department of Corrections Directors Roger Walker, Warden Frank Shaw, Nursing Director Mitzi Harmon and Officer Kent Stegal. On February 28, 2006, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff had adequately alleged that: 1) the defendants violated his Eighth Amendment rights when they were deliberately indifferent to his health and safety and exposed him continuously to second-hand smoke in his cell; and 2) Defendant Stegal retaliated against the plaintiff in violation of his First Amendment rights. Both claims are against the defendants in their individual capacities only.

Specifically, the plaintiff alleged that his cell was near the break room and inmates would come and smoke by his cell several times a day. The plaintiff claimed he suffered from headaches, shortness of breath and coughing. The plaintiff says he repeatedly complained about the problem. However, when he tried to send a memo to the warden, Officer Stegal took it and read it. The officer warned the plaintiff that if he tried to file a lawsuit, he would make his life difficult. The plaintiff says shortly afterward, he was fired from his prison job

## II. FACTS

The following facts are taken from the defendants' motions and the plaintiff's responses. The plaintiff was housed at the Hill Correctional Center from November 25, 2003 to February 22, 2006. The plaintiff filed this lawsuit on January 19, 2006.

The plaintiff says he was housed in a non-smoking cell with a non-smoking roommate. The plaintiff says twice a day, inmates would come to the day room which was adjacent to his cell and smoke for approximately one and half hours. The plaintiff says the smoke entered his cell through the screen door and ventilation system. He also says there were several non-smoking cells near his

cell.

Defendant Mitzi Harmon is a registered nurse who worked as Director of Nursing at Hill Correctional Center.   Defendant Harmon says she worked in an administrative capacity and did not routinely provide medical care to inmates.  The defendant says she did occasionally see inmates about particular problems and did respond to inmate complaints. (Def. Memo, Ex.A., p. 1)

Defendant Harmon says she had some interaction with the plaintiff while he was at Hill Correctional Center.  However, Defendant Harmon says she "did not provide direct medical care to the plaintiff, but made notes in the patient's progress notes in the course of my position while attempting to schedule outside treatments and appointments." (Def. Memo, Ex. A, p. 4) The defendant says she was aware that the plaintiff's medical condition was monitored by a physician and she assisted in scheduling appointments with outside physicians and facilities.

Defendant Harmon says she did have one direct contact with the plaintiff regarding his concerns about second-hand smoke.   The plaintiff sent a letter to Defendant Harmon on August 10, 2005.  The plaintiff said  he was a non-smoker but was suffering from smoke related health problems such as "coughing up mucus, sore throat and eyes, watery eyes, irritated throat, chest pains and I am sure my prostrate/urinary problems stems from secondhand smoke." (Def. Mot, Ex. A-4).  The plaintiff asks to be tested for smoke related illnesses and moved to a smoke free environment.

The defendant sent a letter back to the plaintiff the next day.  She stated:

We in H.C.U. are not capable of making the facility non-smoking.  We cannot test people to see if there are any problems either.  Unfortunately, this is due to the cost of these tests, all people have to wait until there are symptoms for diseases before testing can occur.  This is true in the "world" as well as here.  Report your concerns of smoking in the designated non-smoking areas to security. (Def. Memo., Ex A-5).

The defendant says in her capacity as director of nursing, she had "no authority to prohibit smoking in any particular area of the correctional facility" and she adds she is not aware of who can make that decision.  (Def. Memo, Ex. A, p. 3).   The defendant says she referred the plaintiff to security because smoking in a non-smoking area could be a security issue. The defendant says the health care unit was a non-smoking area.  The defendant also states she did not personally smoke near the plaintiff's cell.  This is the only recorded contact between the plaintiff and the defendant concerning the claims in his complaint and the only contact the defendant remembers.

However, the plaintiff says he not only sent the letter to Defendant Harmon, but also sent request slips and spoke with her about the problems he was having with second-hand smoke. (Plain. Respo, p. 4) The plaintiff says it is the defendants job duty to investigate the health and well-being of inmates asking for treatment.  The plaintiff points to the job description for nursing director that he was provided in discovery.  Most of the job duties relate only to the management of the health

care unit itself.   There is no job duty outlined that gives the nursing director the authority to institute polices or treatment programs.  The Nursing Director is responsible for implementing the physician-prescribed treatment programs.

The plaintiff's medical record shows he did complain about second-hand smoke to others in the Health Care Unit.   The plaintiff says he complained on September 8, 2005, about difficulty breathing and chest pain and reported the problem with the smoke in his cell. (Def. Memo, Ex. A-7).  On November 19, 2005, the plaintiff reported to medical staff that he had a sore throat and cough. (Def. Memo,Ex. A-10).  He was treated by a nurse and given cough medicine.  Medical records also demonstrate that the plaintiff complained about smoke and a persistent cough on December 13, 2005.

On February 2, 2006, the plaintiff reported that he was having difficulty breathing and felt like he had "thick phlegm in my throat like I'm choking..." (Def. Memo, Ex. A-12)   The plaintiff blames the problem on second hand smoke.   Nurses treated him and referred him to a physician for further evaluation.

The plaintiff was seen by a doctor on February 17, 2006.  However, the primary purpose of that visit was for follow up care concerning his increased P.A. levels.[1]  The plaintiff told health care staff that he was being transferred to another institution and did not want a further evaluation from a urologist since he did not want to be on medical hold.   The plaintiff says he was told his new facility had non smoking units.   The plaintiff also told medical personnel that he did not want a prostate biopsy although he was advised of the risks of refusing this procedure.  Consequently, the medical procedures were canceled and the plaintiff was transferred on February 22, 2006.   On each of these occasions, the plaintiff was seen and treated by medical personnel but not by Defendant Harmon.

The plaintiff says medical staff at Hill Correctional Center prescribed medication for the health problems he had developed due to second-hand smoke.  The plaintiff does not explain any further.  The plaintiff does not state what medication he received or point to any future treatment received at his new correctional facility.  The parties agree that at some point the plaintiff was given a chest X-ray which detected no abnormalities.  Unfortunately, it is unclear from the record before the court when this occurred.  The plaintiff says he still suffers from shortness of breath, difficulty breathing and coughing. (Def. Mot, Plaint, Depo, p. 23)

Defendant Harmon says she relied upon the recommendations made by physicians and medical staff who were treating the plaintiff for his various complaints.  "At no time during (the plaintiff's) incarceration at the Hill Correctional Center did I believe that (the plaintiff) was suffering from a serious medical need that required my intervention." (Def. Memo, Ex. A, p. 4)

The defendant also states that she has no personal knowledge of the "scientific amounts of

---

[1]The defendant does not explain further.  However, the court notes that P.A. tests check the amount of prostate antigen in the blood and are routinely used to screen for prostate cancer.

smoke present' in or near the plaintiff's cell.  (Def. Memo, Ex. A, p. 3)  However, she believes the amount of smoke in the day room was consistent with that in public facilities that allow smoking and she did not ever believe that the smoke near or in the plaintiff's cell was "inconsistent with those amounts acceptable to society as a whole."  (Def. Memo, Ex. A, p. 5-6).

The plaintiff says this is a misperception because the amount of smoke in the day room is not as think as the smoke in his cell.  The plaintiff says the day room is a large room with better air circulation.  Once the smoke enters his cell it is thick and lingering. (Plain. Resp., p. 2) The plaintiff says Defendant Harmon has no personal knowledge of the level of smoke in his cell.

The plaintiff admits that he never spoke directly to Illinois Department of Corrections Director Roger Walker about his concerns. (Def. Mot, Plain Depo, p 19-20).  The plaintiff informed Walker of the second hand smoke problems by filing a grievance.  However, Defendant Walker did not personally handle grievances in his position as the director and did not handle the plaintiff's grievance. (Def. Mot, Ex. C)

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.  *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at 659.

IV.  ANALYSIS

A.  DEFENDANT WALKER

The court agrees that the plaintiff has not demonstrated that Defendant Walker is liable for his claims.  A defendant cannot be held liable under 42 USC §1983 unless the plaintiff can demonstrate that the defendant's caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982).   The mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under  42 USC §1983.  *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).  For a supervisor to be held liable under 42 U.S.C. § 1983, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. . ." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

The plaintiff admits that he did not personally talk to this defendant.  Defendant Walker is the Director of the Illinois Department of Corrections and it is doubtful he would handle individual inmate's concerns.   In this case, the grievance filed by the plaintiff was not reviewed or signed by Defendant Walker. The plaintiff's claims against this defendant are dismissed.

B.  DEFENDANT STEGALL.

The defendants claim that the plaintiff has failed to demonstrate that Defendant Stegall retaliated against him.   A prison official who takes action in retaliation for a prisoner's exercise of a constitutional right may be liable to the prisoner for damages. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  Although it is easy to state a retaliation claim, the burden of proving the claim is heavy. *Babcock*, 102 F.3d at  275; *see also Cole v Litscher*, 2005 WL 627791 (W.D. Wis. March 15, 2005).  A prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's actions. *Spiegla v. Hull*, 371 F.3d 928, 942-43 (7th Cir. 2004).  Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct. *Id.* at 943.

The plaintiff claims he wrote a letter to the warden complaining about his problems with second- hand smoke.  On December 20, 2004, the plaintiff says he gave that letter to the inmate collecting mail who in turn, gave it to Defendant Stegall.   The plaintiff claims he saw Defendant Stegall read his letter.  The plaintiff says a few minutes later, Defendant Stegall called him over and told the plaintiff he was a troublemaker and should not file a lawsuit.   Then the defendant told the plaintiff he was fired from his porter job.   The plaintiff says when he asked why, he was told that it was because of plaintiff's memos and grievances concerning second-hand smoke.

Correctional Officer Kent Stegall says he had nothing to do with the decision to terminate the plaintiff from his job.  On December 20, 2004, the defendant says at approximately 2:30 p.m., the inmates were ordered to lock up in their cells for a daily headcount.  The defendant claims he

would not have had time to look at the plaintiff's letter and the plaintiff's version of events does not correspond with the way inmate mail is handled.

The defendant says the plaintiff did call him over to the plaintiff's cell on this day and asked why he had been fired from his prison job.   The defendant says he made phone call and discovered that the plaintiff's supervisor's had terminated the plaintiff from his job.  The defendant says he was not involved in the decision and had no input in the decision. (Def. Memo., Ex. D)   The plaintiff responds that Defendant Stegall was his work supervisor on December 20, 2004.

There are clearly far too many disputed material facts for summary judgement on this issue. For example, the defendants did not respond to the plaintiff's claim that Defendant Stegall was his work supervisor.  The defendants have not identified any other work supervisor nor provided any information concerning the reasons for the plaintiff's dismissal from his job.  The motion is denied.

For clarification of the record, Defendant Stegall is named as a defendant only as to the plaintiff's retaliation claim, not his Eighth Amendment claim.  The plaintiff clarified this point during his deposition (Plain. Memo, Plain Depo, pl 24).  A review of the initial complaint confirms this point.

## C.  EIGHTH AMENDMENT CLAIMS

The remaining defendants contend that the plaintiff cannot demonstrate that they violated his Eighth Amendment rights.  A prisoner's forced exposure to second-hand smoke may give rise to an Eighth Amendment claim of cruel and unusual punishment based on present injury and/or a future injury.  To state a claim for present injuries, the plaintiff must demonstrate "that the second-hand smoke caused him to suffer serious existing health problems and that the Defendants were deliberately indifferent to this situation." *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999) *cert denied,* 530 U.S. 1244 (2000).  A serious health problem is a medical condition diagnosed by a physician as requiring a "smoke-free environment," or a condition caused by exposure to smoke that requires treatment by a physician. *Id.*

The Supreme Court has held that a prisoner may also state an Eighth Amendment claim based on unreasonable risk of future injury resulting from the forced exposure to second-hand smoke. *Helling V. McKinney,* 509 U.S. 25 (1993).   To succeed on this claim, the plaintiff must show that he was exposed against his will to excessive levels of second-hand smoke and that the defendants were deliberately indifferent to this exposure. *Id.* at 35-36.

The court agrees with Defendant Harmon that the plaintiff cannot demonstrate that she was deliberately indifferent to his serious medical needs.  The plaintiff's letter to the defendant asks her to do two things: 1) change his cell assignment, and 2) order medical tests to see if the plaintiff suffered from a smoke-related illness.  Neither of these requests are appropriate for the Director of Nursing.  Defendant Harmon did respond to the plaintiff's letter immediately telling

him that the medical staff could not order a non-smoking policy for the entire institution and that vague medical tests for possible disease would not be ordered for anyone.

The plaintiff says he also spoke to the defendant about his second-hand smoke concerns and submitted requests for medical care.   However, there is no evidence Defendant Harmon refused or delayed medical treatment.  In fact, there is no evidence she was directly involved in most of his medical treatment or care.  There is no evidence Defendant Harmon had the authority to change his cell assignment, or establish a non-smoking policy for the break room or any other portion of the correctional center.

The court understands that the plaintiff believes as a medical professional, the defendant should have been more concerned about the well-being of the plaintiff based on his reports of second-hand smoke and his reaction to it.  The plaintiff believes this defendant should have passed these concerns on to the appropriate officials at the correctional institution.  Nonetheless, this is not the appropriate basis for liability.   The motion for summary judgement as to the claims against Defendant Harmon are dismissed.

Defendant Shaw argues the plaintiff cannot demonstrate that he suffered from a serious health condition related to second-hand smoke and cannot demonstrate that he was deliberately indifferent.  The defendant bases his argument on the claim that no doctor at Hill Correctional Center ever diagnosed the plaintiff with a serious medical condition resulting from second-hand smoke.   Unfortunately, the defendant has simply attached dozens of page of medical documents to his brief to support this claim.  There is no affidavit from any medical personnel verifying or interpreting these records.   This is clearly not sufficient.

The plaintiff says he was given medication for a smoke-related medical condition in February prior to his release.  The plaintiff does not elaborate, and he court cannot interpret the medical notes.  The defendants' memo also does not mention the possibility of damages for future injury.  The motion for summary judgment on this claim is denied.

CONCLUSION

The plaintiff has two surviving claims:

1) Defendant Shaw violated the plaintiff's Eighth Amendment rights due to the plaintiff's forced exposure to second-hand smoke.  The plaintiff is claiming present injury and/or a future injury.
2) Defendant Stegall retaliated against the plaintiff in violation of his First Amendment rights.

The court will require the defendants to submit a second motion for summary judgement addressing the Eighth Amendment claim with an appropriate affidavit from a physician.  The defendants may also address the retaliation claim in their dispositive motion if they have additional

evidence to present.  The plaintiff will be allowed time to file a response to the motion.  The plaintiff does not need to refile documentation he has already provided to the court in his previous responses.  However, if the plaintiff plans to refer to a document he has already provided, he should do so clearly by identifying the specific document.

**ITS IS THEREFORE ORDERED that:**

    **1) Defendant Harmon's motion for summary judgement  is granted pursuant to Fed. R. Civ. P. 56. [d/e 38]   The clerk of the court is directed to enter judgment in favor of the Defendant Harmon in accordance with this order.**

    **2) Defendants Shaw, Stegal and Walker's motion for summary judgement is granted in part and denied in part. [d/e 40].  All claims against Defendant Walker are dismissed.  The clerk of the court is directed to entered judgement in favor of Defendant Walker in accordance with this order.**

    **3) Defendant Shaw is directed to file a second motion for summary judgement with an affidavit from the appropriate medical personnel addressing the plaintiff's Eighth Amendment claims.   Defendant Stegal may also file an additional motion if appropriate.  The second motion for summary judgement must be filed within 21 days of this order.**

    **4) After the defendants file their second motion for summary judgement, the plaintiff may file a response.  The plaintiff must file his response 21 days after receiving the defendants' dispositive motion.  The plaintiff does not need to refile documents he has already provided to the court in response to the previous summary judgement motions. However, the plaintiff is admonished that if he refers to a previously filed document he must do so clearly so the court knows which document he is referencing.**

Entered this 17th day of March, 2008.

            **s\Harold A. Baker**

         _____
                HAROLD A. BAKER
           UNITED STATES DISTRICT JUDGE

9