UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CHARLES TAYLOR,
   Plaintiff,

vs.                                      No. 06-1011

ROGER WALKER , et al.,
   Defendants.

## SUMMARY JUDGEMENT ORDER #2

This cause is before the court for consideration of the Defendant Shaw's Second Motion for Summary Judgement. [d/e 51]

### I. BACKGROUND

The plaintiff, Charles Taylor, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Hill Correctional Center. The plaintiff named four defendants including Illinois Department of Corrections Directors Roger Walker, Warden Frank Shaw, Nursing Director Mitzi Harmon and Officer Kent Stegal.

On March 17, 2008, the court granted Defendant Shaw and Defendant Walker's motions for summary judgement. The court found the plaintiff had two surviving claims:

> 1) Defendant Shaw violated his Eighth Amendment rights when he was deliberately indifferent to the plaintiff's health and safety and exposed him continuously to second-hand smoke in his cell; and
> 2) Defendant Stegal retaliated against the plaintiff in violation of his First Amendment rights. Both claims are against the defendants in their individual capacities only.

Specifically, the plaintiff alleged that his cell was near the break room and inmates would come and smoke by his cell several times a day. The plaintiff claimed he suffered from headaches, shortness of breath and coughing. The plaintiff says he repeatedly complained about the problem. However, when he tried to send a memo to the warden, Officer Stegal took it and read it. The officer warned the plaintiff that if he tried to file a lawsuit, he would make his life difficult. The plaintiff says shortly afterward, he was fired from his prison job.

In the first motion for summary judgement, Defendant Shaw argued that the plaintiff could not show he suffered from a serious medical condition. The defendant stated that no doctor at Hill Correctional Center had ever diagnosed the plaintiff with a serious medical condition. Unfortunately, the defendant attached dozens of pages of medical documents to support his claim without an affidavit from any medical professional verifying or interpreting those records. Consequently, the court ordered the defendant to file a second motion for summary judgement and

1

suggested that Defendant Stegal also file a second motion if there was additional evidence that could address the questions raised in the court order. Defendant Shaw has now filed second motion for summary judgement. Defendant Stegal has not.

## II. FACTS

The following undisputed facts are taken from the Defendants' Second Motion for Summary Judgement and the plaintiff's response. Some facts were also repeated from the initial motion for summary judgement as noted.

The plaintiff was housed at the Hill Correctional Center from November 25, 2003 to February 22, 2006. (Sum. Judg. Order #1, p. 1). The plaintiff says he was housed in a non-smoking cell with a non-smoking roommate. The plaintiff says twice a day inmates would come to the day room which was adjacent to his cell and smoke for approximately one and half hours. The plaintiff says the smoke entered his cell through the screen door and ventilation system. (Sum. Judg. Order #1, p. 1-2).

In his deposition, the plaintiff alleges that second-hand smoke at Hill Correctional Center caused him to experience chest pains, runny eyes, a bad cough and a sore throat. (Plain. First Mot, Ex. A, p 14)

Dr. Jill Wahl is currently employed as a doctor at the Big Muddy Correctional Facility where the plaintiff is currently housed. Dr. Wahl says she has reviewed the medical records of the plaintiff and notes that he was seen by medical doctors over 10 times during his approximately two years at Hill Correctional Center. (Def. Mot, Ex. C, p. 1) In addition, he was seen by nursing staff on more than 15 occasions during this same time period. (Def. Mot, Ex. C, p. 1)

Dr. Wahl notes that the medical records verify that the plaintiff was assigned to a non-smoking cell. Dr. Wahl further states the medical records show no medical reason why the plaintiff would require a completely smoke-free environment. (Def. Mot, Ex. C, p. 1)

Dr. Wahl states that no medical professional ever diagnosed the Plaintiff with a medical condition caused by exposure to environmental tobacco smoke. (Def. Mot, Ex. C, p. 1). The plaintiff disputes this point and states on two occasions he was diagnosed with a serious enough medical condition to require medication. On September 8, 2006, a nurse notes that the plaintiff complains of breathing difficulties and he claims it is due to second hand smoke. The nurse approved 200 milligrams of Advil, the same amount that could be obtain over-the -counter at a pharmacy.

The plaintiff also points to February 17, 2006. However, as the court previously noted, the the primary purpose of this visit was for follow up care concerning his increased P.A. levels.[1]

---

[1] The court notes that P.A. tests check the amount of prostate antigen in the blood and are routinely used to screen for prostate cancer.

There is no indication that the plaintiff was prescribed medication or that he suffered from a medical condition related to second-hand smoke. (Sum. Judg. Order #1, p. 3)   The plaintiff also admits that he did receive a chest X-ray at some point, and the X-ray did not show any injury or damage. (Plain Resp., p. 2).

Dr. Wahl says based on her review of the medical records, it is her medical opinion that the plaintiff never suffered from a serious medical condition resulting from the exposure to second-hand smoke. (Def. Mot, Ex. C, p. 2)   Dr. Wahl further states the medical records show no medical reason why the plaintiff would require a completely smoke-free environment.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).   In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### IV. ANALYSIS

Defendant Shaw argues that the plaintiff can not demonstrate a violation of his Eighth Amendment rights.  A prisoner's forced exposure to second-hand smoke may give rise to an Eighth Amendment claim of cruel and unusual punishment based on present injury and/or a

future injury. To state a claim for present injuries, the plaintiff must demonstrate "that the second-hand smoke caused him to suffer serious existing health problems and that the Defendants were deliberately indifferent to this situation." *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999) *cert denied,* 530 U.S. 1244 (2000). A serious health problem is a medical condition diagnosed by a physician as requiring a "smoke-free environment," or a condition caused by exposure to smoke that requires treatment by a physician. *Id.*

Defendant Shaw states that the case before the court is analogous to *Henderson v. Sheahan,* 196 F.3d 839 (7th Cir. 1999). In *Henderson,* pretrial detainee complained that although he was housed in a nonsmoking section of the jail, he was still constantly exposed to second-hand smoke. The plaintiff stated that even his cell mate smoked. *Id.* at 842. As a result, the plaintiff said the smoke "caused him to experience difficulty in breathing, chest pains, dizziness, drowsiness, sinus problems, burning sensations in his throat and headaches." *Id.* The plaintiff claimed he repeated complained about the problem and was seen several times by health care workers, but there no medical records indicating a health problem due to smoke.

The court noted that no doctor had ever recommended or ordered that the plaintiff be moved to a different area due to smoke. *Id.* at 846 In addition, the court found that the medical problems the plaintiff complained of were relatively minor.

> While we do not doubt these ailments caused him some distress and discomfort, they are not the sort of objectively serious injury or medical need that amounts to a denial of the "minimal civilized measure of life's necessities" necessary to state a (constitutional) violation. *Id.* at 846, *citations omitted.*

The Seventh Circuit further noted that it had "already determined that these sorts of injuries are not sufficiently serious to be constitutionally actionable. "*Id.* at 842; *see also Oliver v. Deen*, 77 F3d 156, 156-61.

The plaintiff in this case has alleged basically identically ailments. In addition, he was repeatedly seen by medical personnel, but no doctor ordered or even recommended that he be moved to a smoke free environment. In addition, Dr. Wahl states there are no medical records to support the plaintiff's claim that he suffered from a serious medical condition due to second-hand smoke. The plaintiff has pointed to only two occasions, one in which he was provided an over-the-counter strength Advil and another that was not related to second-hand smoke. In addition, the plaintiff admits that a chest X-ray revealed no medical condition. The plaintiff has failed to demonstrate that he suffered from a serious medical condition.

The Supreme Court has held that a prisoner may also state an Eighth Amendment claim based on unreasonable risk of future injury resulting from the forced exposure to second-hand smoke. *Helling v. McKinney,* 509 U.S. 25 (1993). To succeed on this claim, the plaintiff must show that he was exposed against his will to excessive levels of second-hand smoke and that the defendants were deliberately indifferent to this exposure. *Id.* at 35-36. The plaintiff "must show

that he himself is being exposed to unreasonably high levels of ETS." *Id.* at 36. "Damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover money damages." *Henderson,* 196 F.3d at 849. The plaintiff has not met this burden.

The court notes that Defendant Shaw also argues that even if the plaintiff could somehow prove he suffered from a serious medical condition, there is no evidence the defendant was deliberately indifferent. The plaintiff alleges that he repeatedly told Defendant Shaw about the problems he was having due to second-hand smoke. However, the plaintiff was not prevented from seeing medical personnel and was he seen repeatedly by medical personnel during his stay at Hill Correctional Center. No doctor ever diagnosed the plaintiff with a serious health condition as a result of second-hand smoke and no doctor ordered that the plaintiff be moved to a completely smoke-free environment. Defendant Shaw argues that as since he is not a medical employee, he may rely on the opinions of medical experts to determine whether there is a danger to the inmate's health and safety. *See Johnson v. Doughty,* 433 F.3d 1001, 1011 (7th Cir. 2006). The defendant is correct. The motion for summary judgement on the plaintiff's claim that Defendant Shaw was deliberately indifferent to his serious medical condition is granted.

## V. CONCLUSION

The plaintiff has one surviving claim: Defendant Stegal retaliated against the plaintiff in violation of his First Amendment rights. The plaintiff claims he wrote a letter to the warden complaining about his problems with second- hand smoke. On December 20, 2004, the plaintiff says he gave that letter to the inmate collecting mail who in turn, gave it to Defendant Stegall. The plaintiff claims he saw Defendant Stegall read his letter. The plaintiff says a few minutes later, Defendant Stegall called him over and told the plaintiff he was a troublemaker and should not file a lawsuit. Then the defendant told the plaintiff he was fired from his porter job. The plaintiff says when he asked why, he was told that it was because of plaintiff's memos and grievances concerning second-hand smoke. Correctional Officer Kent Stegall denies the plaintiff's claims and states that he had nothing to do with the decision to terminate the plaintiff from his job. The case will be set for pretrial conference and jury trial on the surviving allegation.

**ITS IS THEREFORE ORDERED that:**

> **1) The Defendant Shaw's Second Motion for Summary Judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 51]   The clerk of the court is directed to enter judgment in favor of Defendant Shaw in accordance with this order.  The parties are to bear their own costs.**
>
> **2)  A final pretrial conference is scheduled for January 26, 2009 at 1:30 p.m. by video conference.   The parties are further directed to submit the proposed final pretrial order by Friday, January 23, 2009.   The clerk is to issue a writ for the parties participation in the video**

conference.

3)  The defendants bear the initial responsibility for preparing the proposed pretrial order.  The proposed order must include (1) the name, prison number, and place of incarceration for each inmate to be called as a witness; 2) the name and place of employment for each Illinois Department of Corrections employee to be called as a witness; and 3) the names and addresses of any witnesses who are not inmates or IDOC employees for whom a party seeks a trial subpoena.  The party seeking the subpoena must provide the witness fee and mileage fee to such witness and is responsible for service of the subpoena under Fed. R. Civ. P. 45.

4  A jury trial is scheduled for February 2, 2009 at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference.  The Clerk is directed to issue appropriate process for the personal appearance of the plaintiff at the trial and the video appearance of the inmate witnesses listed in the final pretrial order who are not parties to this case and of those IDOC employees listed in the final pretrial order who will appear by video.  The clerk is to issue a writ for the plaintiff's personal appearance at trial.

Enter this 12th day of January, 2009.

                s\Harold A. Baker

              _____
                HAROLD A. BAKER
             UNITED STATES DISTRICT JUDGE